## STATE v. P. W. WHALEY.

### (Filed 17 March, 1926.)

1. **Automobiles—Statutes—Negligence—Instructions—Proximate Cause— Appeal and Error.**

    In order to convict the defendant of manslaughter for the unintentional death of one riding in an automobile with him, caused by his negligently colliding with a motor truck on the street of a town, where the evidence on the question of his negligent driving is conflicting as to whether he was exceeding the speed limit and disregarding the precaution regulated and prescribed by statute, C. S., 2618, as amended by chapter 272, Public Laws of 1925, an instruction that made the defendant's guilt to depend upon whether he was driving in disregard of the statutory requirements, without reference to whether this caused or was the proximate cause of the injury, is reversible error.

2. **Automobiles—Negligence—Statutes—Safety Regulations.**

    The speed limit prescribed by statute at which an automobile driver may go at various places, does not alone excuse those who drive within that specified by the statute, and it is likewise required that they use proper care where other conditions require it within the limitations given.

3. **Automobiles.— Statutes — Safety   Regulations — Involuntary   Manslaughter.**

    Where one drives his automobile in violation of the statutory requirements, and thus directly, or without an independent intervening sole proximate cause, the death of another results, he is guilty of manslaughter, though the death was unintentionally caused by his act.

4. **Instructions—Contentions—Appeal and Error.**

    The contentions of the parties to the action under the evidence is not a necessary part of the instructions of the trial judge to the jury upon the law of the case, and error committed therein, when not excepted to at the time, is ordinarily not reversible on appeal. C. S., 564.

**5. Evidence—Defendant as Witness—Character.**

> Evidence of the good character of a defendant in a criminal action, who has taken the witness stand in his own behalf, may be considered by the jury as not only affecting the credibility of his testimony, but also as substantive evidence.

APPEAL by defendant from *Barnhill, J.,* at October Term, 1925, of LENOIR.

Criminal prosecution tried upon an indictment charging the defendant with manslaughter.

There is evidence on behalf of the State tending to show that on 25 July, 1925, about 7:30 p. m., the defendant and two other persons, Fred White and a man by the name of Green, were riding in a Ford automobile, going eastwardly along Bright Street in the residential section of the city of Kinston, at a rate of speed of approximately 35 or 40 miles an hour, when the defendant ran his automobile into a parked truck, causing the Ford car to turn over two or three times, pinning Fred White beneath it and killing him. According to the State's evidence, the truck was parked on the right-hand side of Bright Street not far from where it intersects at right angles with East Street. The defendant crossed the intersection of these two streets just before colliding with the truck as aforesaid, and there seemed to be no lessening of his speed as he crossed the intersection or as he crashed into the truck. There is further evidence tending to show that a storm was gathering at this time, dust was flying in the streets and rain was beginning to fall.

The defendant, on the other hand, testifies that he was driving carefully along Bright Street and across East Street at a rate of speed, not in excess of 12 or 15 miles an hour; and that he approached the truck, standing at an angle on the street and came within a distance of about 8 feet of it, when the driver, Burrell Sutton, suddenly and without warning backed the heavy truck, owned by Oettinger Brothers, into the defendant's car, striking the right-hand rear fender and door of his Ford automobile, causing it to turn over and pin the deceased beneath it.

The defendant's car was stopped within 20 feet from where the collision occurred, and the truck continued to back until it almost reached the middle of the intersection of Bright and East streets.

Upon the conflicting evidence of the State and the defendant, the case was submitted to the jury and resulted in a verdict of conviction. From the judgment pronounced thereon, the defendant appeals, assigning errors.

STATE *v.* WHALEY.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Shaw, Jones & Jones and T. D. Warren for defendant.*

STACY, C. J., after stating the case: The case on appeal was settled by agreement and not by the judge; it contains several exceptions which seem to necessitate a new trial.

There is ample evidence on behalf of the State to warrant a conviction, but the defendant has a different view of the matter, and he contends that the judge's instructions fail to give him the full benefit of his testimony. The following portion of the charge forms the basis of one of the defendant's exceptive assignments of error:

"The court further charges you that the defendant would be guilty, if you find from the evidence that the truck of Oettinger Brothers was backed out in front of his car, causing the car of the defendant to turn over, and if you find that the defendant was violating the speed limit or any other phase of the traffic laws and find that fact from the evidence according to the definition of reasonable doubt just given to you, it would be your duty to render a verdict of guilty."

Under this instruction, it will be observed, the guilt of the defendant is made to depend on whether "the defendant was violating the speed limit or any other phase of the traffic laws" at the time of the collision, regardless of any other cause and without a finding that White's death ensued as a result of such violation or was occasioned thereby. It does not follow, as a necessary corollary, that the deceased met his death at the hands of the defendant, simply because he was driving in violation of some phase of the traffic laws, when it further appears if the defendant's version of the matter be accepted, that the proximate cause of the injury was the backing of the truck into the defendant's car. In the civil case of *Lineberry v. R. R.,* 187 N. C., 786, a boy was injured by a train running at the time in violation of an ordinance of the town of Mebane, which was negligence *per se,* but there the railroad was exonerated from liability because it further appeared that the sole proximate cause of the injury was the act of a playmate in pushing the plaintiff beneath the moving train.

It is conceded by the Attorney-General that the above instruction can hardly be sustained unless it is rendered harmless by other portions of the charge; and we do not find that it is.

Speaking to the subject of criminal negligence in *S. v. Rountree,* 181 N. C., 535, the Court said:

"The degree of negligence necessary to be shown on an indictment for manslaughter, where an unintentional killing is established, is such recklessness or carelessness as is incompatible with a proper regard for

human life. *S. v. Gash,* 177 N. C., 595; *S. v. McIver,* 175 N. C., 761; *S. v. Tankersley,* 172 N. C., 955. The negligence must be something more than is required on the trial of an issue in a civil action, but it is sufficient to carry the case to the jury in a criminal prosecution where it reasonably appears that death or great bodily harm was likely to occur. *S. v. Gray,* 180 N. C., 697. A want of due care or a failure to observe the rule of the prudent man, which proximately produces an injury, will render one liable for damages in a civil action, while culpable negligence, under the criminal law, is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others. *S. v. Goetz,* 83 Conn., 437; 30 L. R. A. (N. S.), 458."

It is generally held that where one is engaged in an unlawful and dangerous act, which is itself in violation of a statute intended and designed to prevent injury to the person, and death ensues as a consequence thereof, the actor is guilty of manslaughter at least, and under some circumstances, of murder. *S. v. McIver,* 175 N. C., 761; *S. v. Sudderth,* 184 N. C., 753; *S. v. Jessup,* 183 N. C., 771.

So far as pertinent to the present appeal, C. S., 2618, as amended by chapter 272, Public Laws of 1925, provides: "No person shall operate a motor vehicle upon the public highways of this State recklessly, or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic, and use of the highway, or so as to endanger the property or the life or limbs of any person: *Provided:* that no person shall operate a motor vehicle on any public highway, road or street of this State at a rate of speed in excess of:

"(A) Twenty miles per hour in the built-up residential section of any village, town or city. (Built-up residential section defined.)

"(D) Fifteen miles per hour in traversing an intersection of highways when the driver's view is obstructed." (Obstruction of driver's view defined.)

But in fixing the maximum rates allowed by law in cities and towns or upon the public highways, the statute does not purport to establish rates of speed which would be lawful under all circumstances. No rate must be greater than is "reasonable and proper," considering the time and place, and "having regard to the width, traffic, and use of the highways," nor should it be such "as to endanger property or the life or limb of any person." Proper speed under certain conditions, may be excessive speed under others; and proper speed in the daytime might be grossly excessive at night. *S. v. O'Brien,* 32 N. J. L., 169.

It is the unanimous holding of all the recent decisions that, when one drives his automobile in such a manner as to violate the law pertaining to its safe operation, and in so doing causes the death of another,

he is guilty of manslaughter. Note 27 A. L. R., 1182. "Involuntary manslaughter," says Wharton, Am. Crim. Law (11 ed.), sec. 426, p. 622, "is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part not amounting to a felony."

It follows, therefore, if the jury should find that the present defendant was driving his machine in violation of any of the statutory regulations pertaining to its safe operation, and thus occasioned the death of the deceased, he would be guilty of manslaughter; but the culpable negligence of the defendant, and not an independent, intervening, sole proximate cause, must have produced the death. *S. v. McIver, supra.*

Again, the defendant complains at what was said to the jury in regard to his evidence of good character. After stating the defendant's contention that his good character should be taken into consideration in passing upon the credibility of his testimony and also in determining the question of his guilt or innocence, the court gave the following as a contention of the State:

"The State, in reply to that, contends that good character does not have any weight in a case of this kind, and that you should not take the good character into consideration when passing upon the guilt or innocence of the defendant because good men violate the State traffic laws every day."

In view of our decisions touching the general subject of contentions (*S. v. Sinodis,* 189 N. C., 565), and as no definite determination of this exception is required by the present record, we omit any ruling as to the merits of the assignment of error based thereon, but it may be doubted as to whether an erroneous proposition of law, though given as a contention of one of the parties, can be sustained. *S. v. Love,* 187 N. C., 32. The contentions of the parties arise out of a different understanding of the facts, while, in theory at least, there can be no divergence of understanding as to the law. The judge declares the law arising on the evidence, and what he says is the law of the case so long as it stands. "That the contentions be given is neither required by the statute, C. S., 564, nor by law"—*Varser, J.,* in *Wilson v. Wilson,* 190 N. C., 819.

Evidence of the defendant's good character, when his character is put in issue and when he also testifies in his own behalf, is competent (1) as bearing upon the credibility of his testimony and (2) as touching the question of his guilt or innocence. *S. v. Cloninger,* 149 N. C., 567.

Speaking to the subject in *S. v. Moore,* 185 N. C., 637, *Hoke, J.,* said: "It is fully recognized in this jurisdiction that in an indictment for crime, a defendant may offer evidence of his good character and have same considered as substantive testimony on the issue of his guilt or innocence. And where in such case a defendant has testified in his own behalf and evidence of his good character is received from him,

it may be considered both as affecting the credibility of his testimony and as substantive evidence on the issue," citing authorities for the position.

A new trial must be ordered so that the defendant's evidence, as well as that of the State, may be submitted to the jury under correct legal instructions.

New trial.