STATE v. NORVELL SATTERFIELD.

(Filed 14 May, 1930.)

**1. Homicide C a—Definition of involuntary manslaughter.**

Involuntary manslaughter at common law is the unintentional killing of a human being without malice by an unlawful act not amounting to a felony or by an act naturally dangerous to human life, or by negligently doing a lawful act, or negligently failing or omitting to perform a duty imposed by law.

**2. Same—Violation of statute enacted for public safety which is proximate cause of death is sufficient for conviction of manslaughter.**

The violation of a statute enacted for the purpose of protecting the public traveling on the public highways of the State is in itself sufficient for a conviction of manslaughter if the violation is in causal relationship with the injury or a proximate cause thereof.

**3. Same—Where evidence does not show that defendant's negligence was proximate cause of death nonsuit is proper.**

The manifest object of C. S., 2621(63) is to protect the public by requiring the driver of an automobile upon the public highways of the State to stop and ascertain the circumstances and conditions at highway intersections, particularly with reference to traffic, with a view of determining whether in the exercise of due care he may go upon the intersecting highway with reasonable safety to himself and others, and where the defendant in a prosecution for manslaughter fails to stop, but has knowledge of the conditions and has an unobstructed view of the highway for a long distance, and there is no evidence tending to show that he had violated any other statute or that he was negligent in any other respect, the evidence alone that he had violated the statute in the respect stated is insufficient to take the case to the jury, there being no evidence that the violation of the statute was a proximate cause of the death or in causal relation thereto, and defendant's motion as of nonsuit, made in apt time, should have been granted.

**4. Same—Proximate cause must be shown beyond a mere chance or casualty.**

Where a conviction of involuntary manslaughter is sought for the failure to observe a positive duty imposed by statute with reference to the driving of automobiles upon the State highways (C. S., 2621(63), Michie), the question of proximate cause must be shown beyond a mere chance or casualty.

APPEAL by defendant from *Shaw, J.,* at December Term, 1929, of GUILFORD. Reversed.

Defendant was convicted of manslaughter arising out of the alleged negligent operation of an automobile, resulting in the death of Mrs. Alice Johnson. The defendant, as required by the statute, moved to dismiss the action as in case of nonsuit. Denied. Exception.

The evidence most favorable to the State tended to show the facts to be as follows:

The accident occurred approximately three-quarters of a mile outside the corporate limits of the city of Greensboro on highway No. 10. At the place of the accident the highway is intersected or crossed by a road, the name of which on one side of the highway is the Pinecroft road, and on the other Lathamtown road. At the place of intersection No. 10 has a hard surface 30 feet wide according to one witness and 40 feet wide according to another. On each side there are dirt shoulders about 10 feet in width. The Pinecroft road has a hard surface about 18 feet in width, with slight dirt shoulders. The collision took place between a White Motor Bus and a car driven by the defendant. The bus left High Point going in the direction of Greensboro at 8:30 or 8:40 in the morning. The weather was cold; it was raining and sleeting; there was ice on the highway. The driver of the bus said "there was ice in spots in the road." It was a 22-passenger bus and carried six or seven passengers at the time of the injury. It had a windshield wiper which was in use. It was traveling about 25 or 30 miles an hour. As it approached the intersection referred to, a car driven by the defendant came out of the Pinecroft road into highway No. 10, turned in the direction of Greensboro, straightened out, and was a few feet in front of the bus. The speed of the car was estimated by one witness for the plaintiff at less than 15 miles an hour, and by another at 25 or 30 miles an hour. The bus overtook the car, the right fender of the bus striking the left fender of the car; the bus swerved to the left, skidded, went about 75 feet, crossed a ditch three to six inches deep, ran up an embankment, and turned on its right side. Mrs. Johnson, who was a passenger on the bus, suffered injuries from which she died a short time afterwards.

A person coming into highway No. 10 on the Pinecroft road can see No. 10 at a distance estimated at from 100 to 180 yards. On the right side of the Pinecroft road there was a regulation stop sign and the defendant did not bring his car to a full stop before entering the highway.

The State contends that the defendant is guilty of involuntary manslaughter; the defendant contends that he is not guilty of any offense.

The jury returned a verdict of manslaughter, and from the judgment pronounced the defendant appealed.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*
*Brooks, Parker, Smith & Wharton for defendants.*

ADAMS, J. In deciding whether the conviction and judgment can be sustained, we must consider the evidence as having been accepted by the

jury, with all its legitimate inferences. Thus considered does the evidence make a case of involuntary manslaughter?

This offense consists in the unintentional killing of one person by another without malice (1) by doing some unlawful act not amounting to a felony or naturally dangerous to human life; or (2) by negligently doing some act which in itself is lawful; or (3) by negligently failing or omitting to perform a duty imposed by law. These elements are embraced in the offense as defined at common law. Wharton, Homicide, 7; 1 Crim. Law (11 ed.), 622; 1 McClain on Crim. Law, 303, sec. 335; Clark's Crim. Law, 204. The definition includes unintentional homicide resulting from the performance of an unlawful act, from the performance of a lawful act done in a culpably negligent way, and from the negligent omission to perform a legal duty. For the present purpose we may lay aside the common-law doctrine of culpable negligence in the performance of a lawful act and the common-law doctrine of unintentional homicide caused by an unlawful act not forbidden or made unlawful by any statute. Examples of the latter class may be found in decisions which from early times have maintained the elementary principle that if a person drives a vehicle on a highway recklessly or at an unusually rapid speed and runs over another and kills him he may be guilty of manslaughter. *Rex v. Walker,* 171 Eng. Rep., 1213. The prosecution of the case before us was conducted upon the theory of an alleged breach of a positive injunction of the following statute:

"The State Highway Commission with reference to State highways and local authorities with reference to highways under their jurisdictions are hereby authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. That no failure so to stop, however, shall be considered contributory negligence *per se* in any action at law for injury to person or property; but the facts relating to such failure to stop may be considered with the other facts of the case in determining whether the plaintiff in such action was guilty of contributory negligence." P. L. 1927, ch. 148, sec. 21; C. S. (Michie), sec. 2621(63).

The defendant admits that on the Pinecroft road there was a "stopsign," or sign notifying drivers to come to a full stop, and that he did not observe this warning.

Sometimes responsibility for death turns upon the question whether the unlawful act is *malum in se* or *malum prohibitum,* as in *S. v. Horton,* 139 N. C., 588; but in *S. v. McIver,* 175 N. C., 761, the Court said: "It is, however, practically agreed, without regard to this dis-

tinction, that if the act is in violation of a statute intended and designed to prevent injury to the person and is in itself dangerous, and death ensues, the person violating the statute is guilty of manslaughter at least, and under some circumstances of murder." In that case it was held that the motion for nonsuit was properly denied because there was evidence that the defendant had driven the vehicle in breach of a positive law and with such recklessness as was sufficient to make him guilty independently of a violation of the statute or ordinance. The principle there announced was approved in *S. v. Gash,* 177 N. C., 595, in which, upon the same grounds, a conviction of manslaughter was sustained. In *S. v. Gray,* 180 N. C., 697, the Court upheld a similar conviction, not only because the defendant was guilty under the common-law doctrine of unintentional homicide caused by reckless driving, but because he disregarded the positive mandate of a statute. While the conviction of the defendant in *S. v. Rountree,* 181 N. C., 535, was maintainable upon the ground of his culpable negligence at common law, the Court reaffirmed the principle stated in *McIver's case* and remarked that if the defendant was operating his machine in disregard of the statute he was engaged in an unlawful act.

To make a case of culpable negligence at common law it is necessary, under our decisions, to show a higher degree of negligence than is required to establish negligent default in a civil action *(S. v. Tankersley,* 172 N. C., 955); but if a person does an act which is in breach of a positive law designed to prevent injury to the person, which is likely to produce death or great bodily harm, and which proximately causes death, . . . such person is guilty of manslaughter. *S. v. McIver, supra; S. v. Gray, supra.*

There is ample evidence of the defendant's disregard of the statute; his failure to obey the law was the negligent omission of a legal duty. *Ledbetter v. English,* 166 N. C., 125. But this was not sufficient in itself to warrant his conviction. There are yet to be considered the elements of causal relation and, indeed, of proximate cause; for mere proof of a negligent act does not establish its causal relation to the injury; and evidence of causal relation is not necessarily proof of proximate cause. *Hudson v. R. R.,* 142 N. C., 198. The cause of an injury may be proximate or remote. To hold a person criminally responsible for a homicide his act must have been a proximate cause of the death. Wharton on Homicide, 31; *S. v. Preslar,* 48 N. C., 421. It need not have been the direct cause; it may have been an indirect cause; but no person can be guilty of homicide unless the act is his, actually or constructively. Clark's Crim. Law, 155; *Commonwealth v. Campbell,* 83 Am. Dec., 705.

We are not concerned with the question of negligent default in a civil action, as in *Fowler v. Underwood,* 193 N. C., 402, but with the con-

stituent elements of involuntary manslaughter. In their application to the defendant's negligent act these elements call for a construction of C. S., 2621(63); for in determining whether the death of Mrs. Johnson was proximately caused by the defendant's disobedience of the law we must ascertain the evils the statute is designed to prevent.

It provides that the driver's failure to stop in obedience to the sign shall be unlawful. Whether this provision is apparently out of line with another provision of the same statute we need not pause to consider. The manifest object of the provision is to create a situation in which the driver of a motor vehicle shall have opportunity to inform himself of circumstances and conditions, particularly in reference to traffic, with a view to determining whether in the exercise of due care he may go upon the intersecting highway with reasonable safety to himself and others. If the defendant approached the intersection without coming to a full stop and yet had knowledge of all the conditions which literal obedience to the statute would have disclosed, his failure to stop cannot be imputed to him as such criminal negligence as would justify a conviction of manslaughter. As we read the evidence this is the exact situation. Stopping his car at the sign would not have enabled him to acquire any additional information. He knew the condition of both highways—their width and their hard surfaces coated with ice. From the Pinecroft road his view up the main highway was unobstructed for a distance of five hundred and forty feet, and it would not have been expanded by his stopping at the sign. He saw the bus; he knew all he would have known had he stopped. Conceding, then, that a person may unlawfully kill another by doing an act which is in violation of a statute designed to prevent injury to the person and which is likely to result in death or bodily harm, we are of opinion that the evidence in this case fails to show such proximate causal relation between the breach of the statute and the death of Mrs. Johnson as is essential to a prosecution for involuntary manslaughter. We have reached this conclusion independently of any consideration of various other conditions which may have contributed to the accident.

It is said that if the defendant had observed the statute the collision would not have occurred, because the bus would have passed in advance of the car; but inseparable from this position is the idea of mere chance or casualty and not of the exercise of judgment or due care. As we have pointed out, the object of the statute is not to delay or impede travel, but to prevent travelers on the highways of the State from carelessly and blindly rushing into situations which menace danger—not to retard the progress of those who are traveling with knowledge of surrounding conditions.

The defendant's breach of the statute we have quoted is the only ground upon which the State relies to sustain the judgment of the trial court. It is not contended that he violated any other statute or that he drove his car recklessly or with culpable negligence after going by the sign.

The motion to dismiss the action should have been granted.

Judgment reversed.