IN RE: INQUIRY CONCERNING A JUDGE, NO. 132, STAFFORD G. BULLOCK

No. 426A90

(Filed 2 May 1991)

**Judges § 7 (NCI3d)— censure of judge—conduct prejudicial to administration of justice**

A district court judge was censured by the Supreme Court for conduct prejudicial to the administration of justice that brings the judicial office in disrepute based on the following conduct: respondent judge ordered the detention of an attorney who declined to give a reason for his motion to withdraw as counsel for the defendant in a criminal case and to make a recommendation concerning defendant's eligibility for the first offender's program on the ground that to do so would require him to reveal confidential information in violation of the attorney-client privilege; when the attorney again declined to make a recommendation after being detained for forty-five minutes, respondent informed the attorney in open court that in the future he would accept no recommendations from him, would grant him no continuances, would not appoint him to represent indigent defendants, and would require his clients to plead guilty or not guilty as charged; during a recess, respondent discussed the matter with an experienced attorney who called respondent's attention to the adverse impact respondent's directives would have on the attorney's ability to

practice law; and thereafter, despite the expressions of concern about respondent's directives, respondent again addressed himself to the attorney in open court in front of all those present and stated that the matter had gotten out of hand but that everything he had said earlier regarding recommendations, continuances, indigent appointments, and pleas still applied.

**Am Jur 2d, Judges §§ 18-20, 50.**

THIS matter is before the Court upon a recommendation by the Judicial Standards Commission, filed with the Court on 23 August 1990, that Judge Stafford G. Bullock, a Judge of the General Court of Justice, District Court Division, Tenth Judicial District of the State of North Carolina, be censured for conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Heard in the Supreme Court 11 February 1991.

*Lacy H. Thornburg, Attorney General, by James J. Coman, Senior Deputy Attorney General, and R. Dawn Gibbs, Assistant Attorney General, for the Judicial Standards Commission.*

*Womble Carlyle Sandridge & Rice, by Donald L. Smith; Bass & Bryant, by Gerald L. Bass; and Theresa A. N. Glover, Duke University School of Law, for Respondent.*

PER CURIAM.

The Judicial Standards Commission (Commission) notified Judge Stafford G. Bullock on 12 April 1989 that it had ordered a preliminary investigation to determine whether formal proceedings under Commission Rule 7 should be instituted against him. The subject matter of the investigation included allegations that during the course of proceedings in open court in *State v. Coble*, Wake County File No. 89 CR 10254, over which Judge Bullock, respondent, presided on 13 March 1989, Judge Bullock wrongfully ordered the detention of the defendant's attorney, Richard N. Gusler, and threatened him when, in the course of representing his client and in response to questions from Judge Bullock, Mr. Gusler refused in good faith on ethical grounds to give Judge Bullock a reason for his motion to withdraw as counsel for defendant and to make a recommendation concerning defendant's eligibility for a diversion program.

Special Counsel for the Commission filed a complaint on 20 November 1989. Respondent answered the complaint and prayed that the action be dismissed and that no recommendation of discipline be forwarded to the North Carolina Supreme Court as provided by N.C.G.S. § 7A-377, the Code of Judicial Conduct and the Rules of the Judicial Standards Commission.

On 28 March 1990, Judge Bullock was given notice in accordance with Rule 10 of the Commission that a formal hearing concerning the charge alleged against him would be conducted. On 29 June 1990, respondent was accorded a plenary hearing before six members of the Commission on the charges contained in the complaint. The Commission's evidence was presented by James J. Coman, Senior Deputy Attorney General, and respondent was represented by his counsel Donald L. Smith, Gerald L. Bass, and Theresa A. N. Glover. After hearing the evidence, the Commission concluded on the basis of clear and convincing evidence that the conduct of respondent constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute and his actions violated Canons 2A, 3A(1), and 3A(3) of the North Carolina Code of Judicial Conduct. The findings upon which the Commission based its conclusion are found in paragraph 9 of its Recommendation and are as follows:

The respondent presided over the 13 March 1989 criminal session of Wake County District Court at which the case of *State v. Thomas Franklin Coble*, Wake County file number 89 CR 10254, was calendared for the morning session of court. Due to the absence of the defendant's attorney, Richard N. Gusler, the case was held open to the afternoon session of court with the consent of the state's witnesses.

When the case was called for trial that afternoon, Gusler was present and conferred with his client prior to trial while other cases on the afternoon docket were being heard. Following this conference, Gusler, acting quite properly and as required by the Rules of Professional Conduct applicable to an attorney in the circumstances in which Gusler found himself, made an oral motion before the respondent asking that he be allowed to withdraw as counsel due to a conflict with defendant Coble.

The respondent inquired several times as to the basis for the motion, and Gusler consistently responded that he could

not reply because to do so would require him to reveal confidential information in violation of the attorney-client privilege. The respondent then asked defendant Coble the same question, and defendant told the respondent that he wanted to go into the first offender's program. Upon hearing this, the respondent asked Gusler for a recommendation concerning Coble's participation in this program. Again acting in accordance with the Rules of Professional Conduct, Gusler declined to make a recommendation, advising the respondent that to do so would require him to reveal information protected by the attorney-client privilege.

Although the respondent normally does not ask a defendant's attorney for such a recommendation and does not even sign the deferred prosecution agreement executed in connection with a defendant's participation in the first offender's program because he feels a defendant's participation is a matter to be determined by the district attorney's representative, the program's personnel, and the defendant, the respondent repeated his request several times, asking for at least a "yes" or "no" answer. Gusler continued to decline to answer on the same grounds, at one point asking the respondent to trust his judgment and finally indicating that the respondent should do what he had to do.

Notwithstanding the fact that Gusler at no time had been rude or disrespectful in his responses to the respondent's inquiries, the respondent directed the courtroom bailiff to take Gusler into custody. The bailiff escorted Gusler into the adjoining jury room where he remained in custody for approximately forty-five (45) minutes. At no time prior to or after his detention order did the respondent ever use the word contempt, indicate to Gusler that he was in contempt or his behavior was contemptuous, or make any other attempt to comply with the requirements of Chapter 5A of the North Carolina General Statutes relating to contempt proceedings. In fact, the respondent deliberately and consciously chose not to use contempt proceedings.

Subsequently, the respondent had the bailiff return Gusler to the courtroom. The respondent again asked for a recommendation from Gusler, and Gusler once again respectfully declined to answer. At that point, in lieu of initiating contempt pro-

ceedings, the respondent unequivocally and emphatically informed Gusler in open court that in the future the respondent would accept no recommendations from him, would not grant him any continuances, would not appoint him to represent indigent defendants, and would require his clients to plead guilty or not guilty as charged.

When Gusler expressed concern about the fairness of the respondent's directives to his future clients, the respondent replied "so be it." The respondent then denied the motion to withdraw and directed Gusler to remain in the courtroom while defendant Coble was sent to be interviewed for the first offender's program.

The respondent recessed into chambers at which time attorney Joe Cheshire, acting at the request of Gusler and with the respondent's consent, discussed the matter with the respondent in terms of a hypothetical case identical to Gusler's situation with defendant Coble. Attorney Cheshire went through the ethical rules applicable to attorneys in such a case, explained the dilemma Gusler faced even in providing a "yes" or "no" answer to the respondent's request for a recommendation, and discussed the adverse impact respondent's directive would have on Gusler's ability to practice law and his reputation among other judges, lawyers, and clients.

The respondent reconvened court and placed defendant Coble in the first offender's program. Thereafter, despite Gusler's and attorney Cheshire's expressions of concern about the respondent's directives, the respondent again addressed himself to Gusler in open court in front of all those present and stated that the matter had gotten out of hand but that everything he had said earlier regarding recommendations, continuances, indigent appointments, and pleas still applied.

Following this incident between the respondent and Gusler, newspaper reports of which he had read, Judge George Bason, Chief District Court Judge of the Tenth Judicial District, issued an administrative order on 16 March 1990. In light of the directives the respondent had issued to Gusler, Judge Bason felt that such an order was necessary to provide relief and protection for Gusler and his clients and for the proper administration of the court system.

**IN RE BULLOCK**

[328 N.C. 712 (1991)]

Based upon these findings of fact and conclusion of law, the Commission recommended that the Supreme Court of North Carolina censure the respondent. On 11 September 1990, respondent petitioned this Court for a hearing on the Commission's recommendation for censure, and prayed that the recommendation of the Commission be rejected, that no discipline be imposed, and for such other relief as is just and proper.

A proceeding before the Judicial Standards Commission is "an inquiry into the conduct of one exercising judicial power . . . . Its aim is not to punish the individual but to maintain the honor and dignity of the judiciary and the proper administration of justice." *In Re Nowell*, 293 N.C. 235, 241, 237 S.E.2d 246, 250 (1977). The recommendations of the Commission are not binding upon the Supreme Court, and this Court must consider all the evidence and exercise its independent judgment as to whether it should censure the respondent, remove him from office, or decline to do either. *In re Martin*, 295 N.C. 291, 301, 245 S.E.2d 766, 772 (1978).

We have carefully examined the evidence presented to the Commission and the arguments of counsel related thereto. We conclude that the findings made by the Commission in paragraph 9 are supported by clear and convincing evidence. *See In Re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983). We agree with the Commission that the actions of the respondent constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute. We also agree with the Commission's conclusion that respondent's actions violate Canon 2A of the North Carolina Code of Judicial Conduct. Under the circumstances, we find it unnecessary to determine whether respondent's conduct may also violate Canons 3A(1) and 3A(3).

After respondent denied the attorney's motion to withdraw, he directed the attorney to remain in the courtroom while the defendant was sent to another room to be interviewed for the first offender's program. During a recess, respondent discussed the matter with an experienced attorney who called respondent's attention to the adverse impact respondent's directives would have on the attorney's ability to practice law. Thereafter, despite the expressions of concern about the respondent's directives, the respondent again addressed himself to the attorney in open court in front of all those present and stated that the matter had gotten out of hand but that everything he had said earlier regarding

recommendations, continuances, indigent appointments, and pleas still applied.

> Not every intemperate outburst of a judge, especially when it is an isolated, single event, occurring in the privacy of the judge's office and brought on by what the judge might reasonably have perceived to be some provocation, amounts to conduct deserving of discipline. To rule otherwise would be asking judges to be more than they can be; it would be asking them to be more than human.

*In re Bullock*, 324 N.C. 320, 322, 377 S.E.2d 743, 744 (1989). Here, however, the respondent's actions in open court, after having sufficient time for reflection, went beyond that which should reasonably be expected of an impartial member of the judiciary. Therefore, rather than promoting public confidence in the integrity and impartiality of the judiciary, this conduct, under the circumstances, was sufficiently egregious to amount to conduct prejudicial to the administration of justice that brings the judicial office in disrepute within the meaning of N.C.G.S. § 7A-376.

For the reasons herein stated, we conclude that the respondent's actions in the case of *State v. Coble*, Wake County File No. 89 CR 10254, constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute. For this conduct, respondent merits censure.

Now, therefore, it is ordered by the Supreme Court of North Carolina, in Conference, that the respondent, Judge Stafford G. Bullock, be, and he is hereby, censured by this Court for the conduct determined herein to be conduct prejudicial to the administration of justice that brings the judicial office into disrepute.